**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NANETTE TUCKER, ) | |
| ) | Case No. 16-cv-1894 |
| Plaintiff, ) | |
| ) | Judge Robert M. Dow, Jr. |
| v. ) | |
| ) | |
| CITY OF CHICAGO, a Municipal ) | |
| Corporation, and SONYA CAMPBELL, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nanette Tucker filed this suit against the City of Chicago ("City") and City Streets and Sanitation employee Sonya Campbell (collectively, "Defendants") for alleged violations of her right to due process through their enforcement of the City's ordinance governing weed control, Chi. Mun. Code § 7-28-120(a) ("Weed Ordinance"). After her first complaint was dismissed by Judge Darrah, Plaintiff filed an amended complaint. Defendants have moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). See [28]. After the motion was fully briefed, the suit was reassigned to the undersigned judge. For the reasons set forth below, Defendants' motion is granted.

**I.   Background[1]**

In 2015, Plaintiff owned a small, vacant lot at 6132 S. Bishop Street on the south side of Chicago. [27] at ¶ 22. On December 4, 2015, she received a notice of violation ("Notice") from the City concerning conditions on her property. *Id.* ¶¶ 19, 26. Specifically, the Notice, which was based on a June 3, 2015 inspection of the property performed by Campbell, indicated that

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pled allegations set forth in the amended complaint and draws all reasonable inferences in Plaintiff's favor. See *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756 (N.D. Ill. 2014).

"weeds are greater than 10 inches in height," in violation of the Weed Ordinance. *Id*. ¶¶ 25, 27. The Weed Ordinance, as relevant, provides that "[a]ny person who owns or controls property within the city must cut or otherwise control all weeds on such property so that the average height of such weeds does not exceed ten inches." *Id*. ¶ 3; Chi. Mun. Code § 7-28-120(a).

Following receipt of the Notice, Plaintiff filed a written request for a hearing to contest the violation with the Department of Administrative Hearings; that hearing was held on December 29, 2015 before an administrative law judge ("ALJ"). [27] at ¶¶ 30-31, 35. Plaintiff appeared at the hearing and was represented by counsel. *Id*. ¶ 34. As evidence of the violation, the City submitted the Notice and photographs allegedly taken by Campbell on the date of the violation. *Id*. ¶ 32.[2] In response, Plaintiff testified that the weeds on her property were *not* "in excess of an average of 10 inches," and she "raised several Constitutional defenses" to the violation, including that the City violated the Due Process Clause through (1) its "policies of ignoring the average height requirement" of the Weed Ordinance, and (2) the delay in "issuance of Notices of Violation."[3] *Id*. ¶¶ 34-35. Ultimately, the ALJ found against Plaintiff[4] and imposed a fine of $640—$600 for the violation of the Weed Ordinance and $40 in court costs.

---

[2] Defendants attached the certified administrative record to their motion. See [29-2]. The certified record includes (1) the Administrative Notice of Ordinance Violation (containing two photographs of Plaintiff's property); (2) an attorney appearance filed by Plaintiff's counsel with the Department of Administrative Hearings; (3) the December 29, 2015 hearing transcript; (4) a document titled "Constitutional Defenses" with an indication that it was Plaintiff's Exhibit A; and (5) the Findings, Decisions, and Order of Administrative Law Judge Mark Boyle. The Court may take judicial notice of matters in public record, including court documents, in deciding a motion to dismiss without converting it to a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); see also *Ray v. City of Chicago*, 629 F.3d 660, 665 (7th Cir. 2011) (it is well established that district courts may take judicial notice of records of administrative actions when deciding motions to dismiss). Plaintiff does not contest judicial notice of these documents, and in fact, she herself has used them in support of her arguments on Defendants' original motion to dismiss. See generally [19].

[3] At the hearing, the ALJ stated that he could not decide constitutional matters. [29-2] at 22. Plaintiff's counsel nevertheless made constitutional challenges to the Weed Ordinance. *Id*.

[4] Specifically, the ALJ found that the City had "prevailed by a preponderance of the evidence." [29-2] at 30.

*Id.* ¶ 35. Although Plaintiff acknowledges that she had the opportunity to appeal the order of the ALJ (*id.* ¶ 38),[5] she instead chose to pay the fine on February 2, 2016 "under protest." *Id.* ¶ 40.

That same day, Plaintiff initiated this 42 U.S.C. § 1983 putative class action against Defendants alleging due process violations. See [1]. After her original complaint was dismissed [25], Plaintiff filed an amended complaint [27]. Plaintiff complains that the City's practices of assessing fines under an incorrect interpretation of the Weed Ordinance and after the delayed issuance of violation notices violated her rights to due process under the Fifth and Fourteenth Amendments. *Id.* ¶¶ 48-54, 56-76, 78-83. Plaintiff further alleges that Campbell, "in her individual/personal capacity," violated Plaintiff's due process rights for the same reasons. *Id.* ¶¶ 44-46. As relief, Plaintiff seeks a refund of the fine, compensatory damages for "emotional distress and anxiety associated with illegal citation for violation of said ordinance," exemplary (or punitive) damages, and costs. See, *e.g.*, *id.* ¶ 42. Plaintiff asserts her claims on behalf of a City-wide class consisting of individuals who were "charged and/or convicted of violation" of the Weed Ordinance "without consideration of or reference to the 'average' height" language and who were not "promptly notified of [their] alleged violations." *Id.* ¶¶ 91-92. Defendants again have moved to dismiss all claims.

**II. Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

---

[5] According to the administrative record, Plaintiff had 35 days, or until February 2, 2016, to appeal to the Circuit Court of Cook County. [29-2] at 33.

3

U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558; see also *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (a Rule 12(b)(6) motion tests the sufficiency of the complaint). When considering whether to dismiss a complaint under Rule 12(b)(6), the Court takes the allegations in the complaint as true, viewing all facts—as well as any inferences reasonably drawn therefrom—in the light most favorable to the plaintiff. *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014).

When a lawsuit is a putative class action, any named plaintiff "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, "none may seek relief on behalf of himself or any other member of the class." *Id.* (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

**III. Analysis**

As a preliminary matter, the Court notes that the *Rooker–Feldman* doctrine (see *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*,

4

460 U.S. 462 (1983)) precludes federal courts other than the Supreme Court from reviewing judgments of state courts. Because the doctrine is concerned only with state court determinations, it generally does not present a jurisdictional obstacle to judicial review of executive action, including decisions made by state administrative agencies, see *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002); and Plaintiff is not required to exhaust her state remedies before suing under § 1983. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir. 1997). Accordingly, Plaintiff cannot be compelled to seek state court review of the ALJ's determination before challenging that determination on constitutional grounds pursuant to § 1983. See *Hemmer v. Ind. State Bd. of Animal Health*, 532 F.3d 610, 614 (7th Cir. 2008) (district court was not precluded from hearing plaintiff's case, even though a state administrative agency had already ruled against him). The availability of state court review, however, will be considered in the evaluation of the process provided by the City. The Court now turns to Plaintiff's due process claims.

### A. Procedural Due-Process Claims Against the City

Beginning with Counts II, III, and IV, Plaintiff alleges that the City violated her due process rights by (1) not accurately enforcing the Weed Ordinance as written (Count II), and (2) failing to issue her Notice in a timely fashion (Count III). Plaintiff also contends that the City violated her due process rights by failing to train its employees to accurately enforce the Weed Ordinance and to issue timely violation notices (Count IV).

A municipality is not liable under § 1983 unless the constitutional violations at issue are caused by a municipal policy or custom. See *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To assert such a claim, Plaintiff must allege facts demonstrating that her injuries were caused by an official unconstitutional policy, a custom (a practice so

widespread that it has the same effect as a policy), or a wide-reaching decision by an individual with authority to make policy decisions. See *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). As with her original complaint, Plaintiff's amended complaint relies on the second way of establishing municipal liability. See [27] at ¶ 10 (the practice is "well-settled and not authorized by written law").

Even before assessing whether Plaintiff has sufficiently alleged a municipal policy, however, the Court must analyze whether she has adequately alleged a cognizable constitutional injury. See *Houskins v. Shehan*, 549 F.3d 480, 493 (7th Cir. 2008) (where plaintiff fails to establish deprivation of a constitutional right, *Monell* claims must also fail); see also *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). A procedural due process claim requires a two-fold analysis. First, the court must determine whether the plaintiff was deprived of a protected interest; second, the court must determine what process is due. *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 804 (7th Cir. 2010) (citing *Pugel v. Bd. of Trustees of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004)). It is well established that due process requires notice and an opportunity for a hearing before the government may deprive a person of property. *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976).

The City does not dispute that Plaintiff has a property interest in the $640 she spent to pay the fine plus costs.[6] The analysis, then, turns to whether Plaintiff has alleged that there were insufficient procedural protections preceding the deprivation of her property right. Determining what procedures are required to ensure due process entails balancing the costs and benefits of whatever procedure the plaintiff contends is required. *Mathews*, 424 U.S. at 335; see also

---

[6] The Court notes, however, that the Seventh Circuit has found monetary interests to be "less significant" than other interests, such as the loss of employment or livelihood, and that monetary interests therefore require fewer procedural safeguards. See *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 600 (7th Cir. 2009).

*Benson v. Scott*, 734 F.2d 1181, 1185 (7th Cir. 1984) (the process that is due in any given case varies according to the factual circumstances of the case and the nature of the interests involved).

         1.     "Misenforcement" (Count II)

Plaintiff alleges that the City's practice of ignoring the phrase "average height of such weeds" in the Weed Ordinance deprived her of due process, as City inspectors "do not even attempt to make a rough estimate of the average height of all weeds on the subject property" or "to identify which vegetation on the property they considered to be weeds." [27] at ¶¶ 48-49. Plaintiff asserts that the City prosecutors and ALJs also ignore this phrase. *Id.* ¶ 9.

As an initial matter, Defendants argue that the amended complaint's Count II is not materially different from Plaintiff's previous "misenforcement" claim based on the same alleged City practice, which was dismissed. See [29] at 5-6; compare [1] at ¶¶ 43-45 with [27] at ¶¶ 47-54. Through her response brief, Plaintiff has chosen not to refute Defendants' argument, but instead to confirm it, stating that she "chooses to stand on her Complaint as previously pled on the issue of misenforcement" of the Weed Ordinance.[7] [32] at 4. This being the case, the Court does not depart from the prior judge's conclusion that Plaintiff's *Monell* claim based on the incorrect application of the term "average height" fails. [25] at 6-10.

To add to the earlier analysis, the Court notes that Plaintiff's due-process claim for "misenforcement" is misguided. She does not point to any specific aspect of the process that she was afforded—the notice, hearing, and available judicial review—as insufficient. At bottom,

---

[7] Plaintiff also admits that she understands that "this Court, in its Memorandum Opinion and Order, rejected Plaintiff's *Monell* claim in Count II alleging that the City of Chicago has a custom and practice of misenforcement" of the Weed Ordinance, but that, through the amended complaint, she elected to focus on amendments concerning "the due process issue of timeliness of notice of alleged violations" of the Weed Ordinance. [32] at 1.

7

Count II rests on Plaintiff's disagreement with the City's interpretation of the Weed Ordinance.[8] Plaintiff's allegations and arguments concerning how to improve the "process" only further highlight the fact that her ultimate complaint is with the ALJ's finding of liability: she circuitously suggests that City inspectors be required to enforce the Weed Ordinance as she reads it and that City prosecutors be required to discuss the "average height" language in the administrative hearings.[9] [27] at ¶ 49; [32] at 4. In any event, the ALJ, in considering whether Plaintiff violated the Weed Ordinance, was presented with Plaintiff's argument in favor of her interpretation of the Weed Ordinance. See, *e.g.*, [27] at ¶ 34. And Plaintiff's fine was not imposed until after the ALJ evaluated the evidence and made a finding of liability. As such, the Court is not convinced that there was a due process violation here. That Plaintiff received an adverse result at the hearing does not render the procedures afforded to her unfair, incomplete, or meaningless. Due process neither guarantees that a litigant's version of events will be believed, *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 630 (7th Cir. 2016) (per curiam) (no due process violation where plaintiff had a sufficient opportunity to present evidence supporting his claim of innocence even though the hearing board chose to discredit his version of events); nor does it entitle a person to a hearing at which they will succeed. *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016).

---

[8] Although Plaintiff alleges that the City failed to fully comply with the language of its own Weed Ordinance, such a failure does not automatically translate into the deprivation of procedural due process under the United States Constitution. See *Idris v. City of Chicago*, 552 F.3d 564, 567 (7th Cir. 2009) (a "federal court assumes that the action is authorized as a matter of local law and asks only whether federal law forbids what the city or state has done. . . . Whether state law permits that action in the first place is a question for state courts, under their own law."). Plaintiff was afforded sufficient avenues to raise this argument in her administrative proceeding as well as an opportunity to appeal.

[9] Moreover, the amended complaint only seeks damages and not any specific injunctive or declaratory relief, which further reinforces the conclusion that Plaintiff's disagreement is with the City's interpretation of the Weed Ordinance instead of the available process.

Moreover, at the conclusion of the hearing, Plaintiff was notified of her right to seek judicial review of the ALJ's decision in the Circuit Court of Cook County. See [29-2] at 30, 33; see also 65 ILCS 5/1-2.1-7 ("Any final decision by a code hearing unit that a code violation does or does not exist shall constitute a final determination for purposes of judicial review and shall be subject to review under the Illinois Administrative Review Law."). If Plaintiff wanted to challenge the adequacy of the City's hearing evidence that her weeds were, on average, more than ten inches high or the accuracy of the ALJ's application of the Weed Ordinance to the evidence, she could have pursued an appeal. Plaintiff does not allege that the state judicial appellate remedy is inadequate or unfair in any way or even that she could not assert her "misenforcement" argument in that forum. This additional remedy is relevant to the Court's analysis of the process afforded to Plaintiff, even though Plaintiff affirmatively chose not to pursue it. See *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003) ("While a plaintiff is not required to exhaust state remedies to bring a section 1983 claim, this does not change the fact that no due-process violation has occurred when adequate state remedies exist. The whole idea of a procedural due-process claim is that the plaintiff is suing because the state failed to provide adequate remedies."); see also *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008) ("[W]e should not reject [a state-law remedy as inadequate] unless the remedy . . . can readily be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due-process relief guaranteed by the fourteenth amendment.") (citation omitted); *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) (a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail herself of them).[10]

---

[10] Since the amended complaint is not entirely clear, to the extent that Plaintiff's "misenforcement" claim can be construed to allege a violation of Plaintiff's substantive due process rights, that also fails.

9

Altogether, Plaintiff has failed to show that the City's alleged "misenforcement" of the Weed Ordinance somehow deprived her of adequate notice of her violation or affected her opportunity to be heard on the violation. Count II fails to state a procedural due process claim against the City.

### 2. Untimely Notice (Count III)

Plaintiff next claims that the City has a practice of intentionally failing to timely serve notices of violation of the Weed Ordinance. See [27] at ¶¶ 56-61, 74-75. Plaintiff claims that this practice, which resulted in a six-month delay between when the violation was recorded and when she received the Notice, substantially prejudiced her ability to "mount an effective defense" to the violation.[11] *Id*. ¶¶ 64, 67, 70-71. Specifically, Plaintiff claims that the untimely notice prevented her from procuring two specific pieces of evidence to aid her defense: (1) contemporaneous measurements of all of the weeds on her property and (2) contemporaneous photographs of the weeds on her property. *Id*. Despite these allegations, Defendants argue that the six-month delay between the property inspection and the issuance of the Notice did not constitute a violation of Plaintiff's constitutional right to due process.

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. As relevant here, Plaintiff admits that she received written notice of the violation and that she contested the violation in a hearing with her attorney present before any fine was imposed. *Id*. ¶¶ 26, 31-34.

---

Substantive due process claims are limited to violations of fundamental rights. See *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). Without the violation of a fundamental right, Plaintiff must prove that public officials abused their power, and thereby violated substantive due process, with behavior that "shocks the conscience." See *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012). Plaintiff neither has asserted a fundamental right in the vegetation growing on her vacant lot nor does her one violation notice and fine shock the conscience.

[11] The amended complaint alleges that the delayed issuance of the Notice is part of a scheme to gain tactical advantage in hearings and ultimately extort revenue. *E.g.*, *id*. ¶ 74. At this stage, the Court does not find that the City's motivation is relevant to the due process analysis.

At the hearing, the ALJ was presented with (1) photographic evidence of Plaintiff's property on the violation date, (2) Plaintiff's testimony, and (3) Plaintiff's defenses to the violation. *Id.* ¶¶ 32, 34-35. After considering the evidence and arguments offered, the ALJ made a determination of liability, and Plaintiff was afforded the opportunity to appeal the decision to the Circuit Court of Cook County. Despite all of this, Plaintiff contends that the hearing was meaningless because the late Notice prevented her from obtaining the two desired pieces of evidence and therefore deprived her of the ability to present "yet another potentially favorable defense" at her hearing. See [32] at 2-3.

As a general principle, due process requires timely notice, not "notice-on-demand." *Cochran*, 828 F.3d at 601. For purposes of Plaintiff's case, her allegations do not show that the non-contemporaneous Notice deprived her of her procedural due process before her Weed-Ordinance fine was imposed. For one thing, Plaintiff's allegations fail to demonstrate why she could not make her more favorable defenses using the evidence actually presented at the hearing. As Plaintiff alleges, at least one photograph of Plaintiff's property on the violation date was admitted at the hearing. [27] at ¶ 32; see also [29-2] at 8 (photograph). One photograph in the certified administrative record captures Plaintiff's property dead on from the street: a vacant lot with vegetation and a chain-link fence separating it from the sidewalk. [29-2] at 8. Plaintiff does not allege that she attempted to measure the weeds in the photograph using the fence as a point of reference, nor does she explain why doing so would have been inadequate. Instead, she only avers in a conclusory manner that "it was impossible to make a true determination of the average height of the weeds" through the photographs. [27] at ¶ 33. Furthermore, the photograph was taken on the violation date, which would seemingly satisfy Plaintiff's desire for a contemporaneous photograph. Plaintiff argues, however, that she wanted to take her own

11

"photographs from angles most favorable to her defense." See [32] at 2. Plaintiff's dissatisfaction with the available evidence does not support a claim for inadequate process.

Even looking past these available avenues and accepting that Plaintiff was unable to construct her preferred hearing evidence from the City's photographs, the amended complaint fails to demonstrate how the absence of the preferred hearing evidence deprived Plaintiff of due process. To be clear, the amended complaint does not allege that Plaintiff was precluded from presenting *any* defense, nor does it indicate that Plaintiff was limited in any way in objecting to the City's evidence or presenting additional evidence of her own. Plaintiff only claims that prompt notice may have allowed her to make more effective or favorable defenses. But due process does not require what Plaintiff desires here, and her inability to present certain more effective or favorable defenses to the degree that she would have liked did not render her hearing meaningless. *Cochran*, 828 F.3d at 601 (the fact that plaintiff could not present a particular defense at his administrative hearing did not render the hearing meaningless).

Plaintiff's reliance on *United States v. Sabath*, 990 F. Supp. 1007 (N.D. Ill. 1998) does not change the Court's conclusion.[12] *Sabath*—a criminal case—concerned a delay of more than *five years* prior to indicting a defendant for arson. During that time period, a number of events transpired that significantly altered the defendant's ability to defend against the charges: the memory of a key fact witness diminished considerably and that witness became unavailable; the government inexplicably lost crucial evidence; and three important witnesses died. *Id*. at 1014. Accordingly, the Court held that the delay had caused the defendant severe, actual prejudice in

---

[12] The other cases relied on by Plaintiff in support of her Count III allegations are similarly unpersuasive and distinguishable, as they largely involve due-process claims in criminal cases. Monetary interests are certainly "less significant" than interests such as the loss of liberty and require fewer procedural safeguards. See *Clancy*, 559 F.3d at 600; see also *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 n.22 (1996) ("The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against 'judgments without notice' afforded by the Due Process Clause, . . . is implicated by civil penalties.").

violation of his due process rights. *Id.* at 1014, 1016. Not only is *Sabath* distinguishable because it arises in the criminal context, but the prejudice Plaintiff has alleged as a result of the six-month delay between the violation date and the issuance of the Notice also does not even come close to the level of the prejudice the defendant faced in *Sabath*—especially not where Plaintiff had avenues to make her desired defenses or seek judicial review of the ALJ's ruling that she deliberately decided not to pursue. At best, Plaintiff's allegations demonstrate that she was "only somewhat prejudiced by the lapse of time," a concept which *Sabath* acknowledged is insufficient to support a due process violation in the criminal context, much less in one dealing with a one-time $640 civil fine. *Id.* at 1014.

For Plaintiff's Weed-Ordinance violation, she has failed to allege that the available remedies were constitutionally inadequate. *Mathews*, 424 U.S. at 335; *Benson*, 734 F.2d at 1185. Construing all of Plaintiff's allegations in her favor and taking into account all of the factors that inform the due process analysis, the Court concludes that Plaintiff nonetheless has failed in her attempt to state a claim for a due process violation on account of the delayed Notice. Count III is dismissed.

### 3. Failure to Train (Count IV)

The Court notes that the prior judge dismissed Count IV in Plaintiff's original complaint, finding that it was dependent on Counts II and III, which were also dismissed. [25] at 11 (citing *Second Amendment Arms v. City of Chicago*, 2012 WL 4464900, at *10-*11 (N.D. Ill. Sept. 25, 2012)). Plaintiff's amended complaint nevertheless re-alleges this count without any material difference; Plaintiff merely has added one allegation to this count claiming that the City failed to train its employees "in the need for prompt and timely issuance of notices of violation" of the Weed Ordinance. See [27] at ¶ 80. Accordingly, Plaintiff has not provided the Court any reason

to depart from the prior holding on Count IV, especially in light of the Court's analysis of Counts II and III and conclusion that Plaintiff's amended complaint fails to allege a constitutional injury. Defendants highlighted this pleading deficiency in their motion to dismiss, and Plaintiff failed to respond to the argument. Where a litigant effectively abandons an aspect of litigation by not responding to alleged deficiencies in a motion to dismiss, the court considers arguments on that point waived. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). For these reasons, Count IV is dismissed.

### B. Qualified Immunity (Count I)

Finally, Count I of the Complaint alleges a § 1983 claim against Campbell in her individual capacity for arbitrarily issuing the Notice without strict adherence to the "average height" language and also failing to issue it in a timely fashion. Defendants again seek dismissal of this count based on the defense of qualified immunity.

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Once a qualified immunity defense is asserted, the burden shifts to the plaintiff to show that the right allegedly violated by the defendant was sufficiently clearly established at the time of the violation. *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013). In particular, a plaintiff must establish two elements: (1) "that the facts alleged describe a violation of a protected right," and (2) "that this right was clearly established at the time of the defendant's alleged misconduct." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014); see also *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000) (a complaint may be dismissed under Rule 12(b)(6) on qualified immunity grounds where plaintiff

asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred).

The amended complaint fails to satisfy either prong of this analysis. For the reasons already set forth above, Plaintiff's amended complaint fails to allege an actionable constitutional violation. Not only that, and despite the order dismissing her original complaint, [25] at 5, Plaintiff still has not attempted to overcome qualified immunity by citing to any Supreme Court or Seventh Circuit case law (or any case law at all for that matter) that would have informed Campbell about the due process requirements for either measuring and calculating the average height of Plaintiff's weeds before issuing the Notice or sending the Notice within a particular timeframe. Instead, Plaintiff claims that the prejudice to her due process rights on account of the delayed Notice is "self-evident." See [32] at 2. This is insufficient, particularly in light of the Seventh Circuit's decision in *Discount Inn v. City of Chicago*, 803 F.3d 317, 327 (7th Cir. 2015), which declined to find the Weed Ordinance's lack of a statute of limitations unconstitutional. Accordingly, Count I is dismissed.

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss [28]. Plaintiff's claims are dismissed without prejudice at this time. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success."). Although the Court is skeptical that Plaintiff will be able to state a claim, in an abundance of caution, Plaintiff is given one final opportunity to file, within 21 days, a motion for leave to file a second amended complaint if she believes in good faith that she can cure the pleading defects identified above. If Plaintiff files such a motion, she

must attach a copy of the proposed amended complaint as an exhibit. Defendants need not file a response brief unless the Court directs otherwise after reviewing Plaintiff's motion and proposed amended complaint. If no motion for leave to amend is filed—or if leave to amend is denied—Plaintiff's claims will be dismissed with prejudice, a final judgment will be entered, and this case will be closed.[13]

Dated: May 19, 2017

Robert M. Dow, Jr.
United States District Court Judge

---

[13] Although Plaintiff does not appear to have a viable complaint, the amended complaint and arguments advanced in this case have not reached the level of bad faith so as to warrant the imposition of sanctions, as Defendant requests in its opening brief. See [29] at 2. Accordingly, the Court declines to grant sanctions in favor of Defendant at this time.